UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY LEO, )
)
     Petitioner )
)
v. )
) Civil Action No. 04-11006-JLT
COMMONWEALTH OF )
MASSACHUSETTS, )
)
     Respondent )
)
)

## PETITIONERS SUPPLEMENT MEMORANDUM IN OPPOSITION TO RESPONDENTS MOTION TO DISMISS DUE TO STATE COURTS FINAL DECISION

I. The petitioner, Anthony Leo, pro se, submits this memorandum of law addressing the impact of the decision handed down by the Massachusetts Supreme Judicial Court in response to his claimed violations of his constitutional rights. This decision, dated September 17, 2004, given by the Massachusetts Supreme Judicial Court was wholly unreasonable. It also fails to comply with the formal requirements of the Federal statutes as to which a "Nationally Uniformed Interpretation" is particularly important, and was reached for particular *"reasons"* to fear that state judges in general, may *"undermined"* or be *"hostile"* to federal laws that were violated. It is also completely contrary to Massachusetts Supreme Judicial Court and U.S. Supreme Court precedent.

On 6/04/2003 Anthony Leo filed a petition, pursuant to M.G.L c.211 §3 claiming that his 8th and 14th Amendments to the U.S.Constitution were violated at his bail hearing held on 7/18/2002 in Worcester Superior Court ( see transcripts of hearings

in petitioner's and respondent's appendix) . In this petition, see appendix filed in this court on 8/9/2004, on page 4, both claims of "excessive bail" and the 14th Amendment "Due Process" protections are cited. On 6/11/2003 the Commonwealth of Massachusetts filed an opposition to this petition (see also in petitioner's appendix 8/09/2004 ), which was full of unsubstantiated claims and errors of fact. On page 6 the Commonwealth concedes that Mr. Leo is probably "No longer suicidal", but then goes on to argue that the defendant " is a DANGER" to the public at large'. A claim of Dangerousness must be made *immediately* upon the defendant's first appearance before a judicial officer , 18 U.S.C. §3142 (f) and M.G.L c.276 § 58A . Since these claims were never made or a "Dangerousness" hearing requested or held, they cannot be claimed now. Furthermore, the Commonwealth questions the outright dismissal of petition and asks the court to remand defendant back to Superior court for a new hearing to determine different terms and conditions other than $5,000,000 surety. Sosman, J. denied relief to petitioner finding "NO" error of law was made in the lower court, but Sosman, J. gave no written findings to justify this decision. In absences of such written findings we must look to the hearing transcripts to understand how Sosman, J. came to her decision. See transcript of hearing in petitioners appendix filed on 8/09/2004. (paper #16). Upon reading these transcripts we find that (page 5) Sosman, J. does not even know the defendant's condition, or if he has ever been sent to Bridgewater State Hospital for an evaluation or treatment ,as would normally be the *right* of someone with obvious mental problems. Sosman, J. does not know what treatment has been done, if medication is being taken, or anything else she *needed* to know before making her decision. Then Sosman, J. goes on to determine whether the Defendant is 'Guilty or Innocent" of the charges. She asks how the Defendant plans to defend himself against these charges and then decides the chances of success at trial are very poor. The weight of evidence against a defendant is the least important factor to consider in "Flight Risk" and the "Bail Reform Act" neither *requires* nor *permits* a pretrial determination of guilt: U.S. v. Honeyman 470F2d at 474: U.S. v. Gebro, 948 F3d 1118,1121; U.S. v. Winsor 785F2d 755, 757; U.S. v. Motamedi, 767F2d 1403,1408 and nothing in 18 U.S.C. §3142 or M.G.L c.276 § 58 shall be construed as modifying or limiting the PRESUMPTION OF INNOCENSE."

On Page 15, the commonwealth states, "Obviously, the bail was set with the implicit or explicit intent that the defendant would *not* be released. This is exactly the type of action that the 8th Amendment of the U.S. Constitution protects against. The Excessive Bail amendment safeguards the right to give bail, at least before trial, and the purpose is to *prevent* the practical *denial* of bail by fixing the amount so unreasonably high that it cannot be given, U.S. v. Motlow 10 F2d 657: Carlisle v. Landon 342 U.S. 524; U.S. v. Salerno 481 U.S.739, Stack v. Boyle, 342 U.S. 1.

On page 17, Sosman, J. states a "possible" inference that the "claimed" suicide attempt could be a "Flight Risk" from prosecution of alleged crimes, but she fails to consider that suicidal behavior has been proved to have occurred multiple times in the past, when **NO** criminal charges have been pending against the defendant. This inference is not enough, or reliable enough to meet "The Preponderance of Evidence Standard" the government must meet to prove a Flight risk, and any doubts regarding the propriety of release should be resolved in the defendant's favor. U.S. v. Motamedi, 767 F2d 1403; U.S. v. Patriarca, 948 F2d 789, 793; U.S. v. Jackson, 823 F2d 4, 5.

There is serious doubt as to any of the "facts" Sosman, J. relied upon to reach her decision in this appeal. On 7/28/2003 the defendant, through counsel, Attorney John Goggins, filed a motion to appeal the decision of Single Justice Sosman to the full court pursuant to the Massachusetts Supreme Judicial Court rule 2:21. Prior to the 7/18/2003 hearing, the defendant communicated to counsel all the issues he wanted raised in this appeal. On multiple occasions Mr. Leo asked Attorney Goggins to produce a copy of the motion before it was filed so that Mr. Leo could review it. Attorney Goggins **did not** produce a copy until two weeks **after** the hearing when Sosman, J. denied it. Through defendant's family, who were present at hearing, (defendant not allowed to be present at hearing) defendant was told that Attorney Goggins was completely unprepared to answer questions asked by Sosman, J. and that almost all issues that Mr. Leo asked him to present and argue were totally ignored. Upon hearing this, Mr. Leo demanded a copy of counsels motion and ordered a tape of the hearing on 7/18/2003. After finally receiving a copy of the motion and seeing how deficient in the legal knowledge of the issues at hand, his skill, thoroughness and preparation, reasonably necessary to handle the appeal, Mr. Leo confronted Attorney Goggins. The Defendant expressed his concerns that

Attorney Goggins had not provided adequate and effective counsel during this appeal and because of this conduct the appeal had failed. All of the time that the defendant would remain behind bars, because his bail was not reduced, would now be because of Attorney Goggins ineffectiveness. Counsel became very agitated and defensive and stated "he did not have to stand for this " and " who did the defendant think he was"?. Soon after this conversation Attorney Goggins withdrew from representing Mr. Leo in Worcester Superior Court an on the above appeal. The Massachusetts Supreme Judicial Court provisionally allowed his withdrawal pending new successor counsel being appointed. See counsel's motion to withdraw. R.A. #1 of accompanying record appendix. On 2/26/2004 new counsel was appointed in Worcester Superior Court to represent Anthony Leo. Attorney Daniel Cronin took over the defendant's case but when he was informed of the pending appeal in the Massachusetts Supreme Judicial Court , he told defendant that he would **not** handle that matter. All letters to Attorney Goggins went unanswered, all phone calls ignored. Attorney Goggins would not even send a copy of the motion he filed for the pending appeal to the Full Court on Mr. Leo's behalf. On 3/12/2004 Mr. Leo wrote to Susan Mellon, Clerk of the Massachusetts Supreme Judicial Court requesting copies of the materials Attorney Goggins would not turn over pertaining to pending appeal. Ms. Mellon was also informed that petitioner was without counsel, that Attorney Goggins would not turn over the requested documents and that Attorney Cronin refused to handle this pending appeal. See R.A. 3 dated 4/06/2004. On 3/22/2004 Mr. Leo was forced to move ahead with his appeal with "**NO** " assistance of counsel, in violation of the 6th Amendment of the U.S.Constitution . Kirby v. Illinois, 406 U.S. 682, 689; Avery v. Alabama 308 U.S. 444; Strickland v. Washington 466 U.S. 668,685; Powell v. Alabama 287 U.S. 45,69. The defendant filed a notice of appearance, stay of appeal, motion to Amend Brief and Appendix and asked the court to order Attorney Goggins to produce a copy of the motion he filed on Mr. Leo's behalf. See R.A.4 in accompanying appendix. On 3/25/2004 all of these motions were allowed. On 4/12/2004 Attorney Cronin withdrew his representation of Mr. Leo in his criminal matters and on 4/13/2004 Attorney Gribowski was appointed to represent Mr. Leo. He also informed defendant that he would **not** and was **not required** to represent the defendant in his appellate matters. On 4/16/2004 the defendant wrote to the Committee for Public Counsel Services and

explained to them his current situation and his need and right to appointed appellate counsel. See R.A. 6 of accompanying appendix, and received a letter back explaining that his current trial attorney **was** required to handle his pre-trial appeal and if he refused he should file a complaint against him. See R.A. 7 dated 5/05/2004. On October 8, 2004 Attorney Gribowski was allowed to withdraw from this case. I have now been appointed a 6th attorney.

Before receiving this letter Mr. Leo had already received a copy of Attorney Goggins brief and found it to be completely inadequate, amended the brief to clarify the Excessive Bail and Due Process claims and added the ineffective assistance (6th amendment) claim arising from Attorney Goggins handling of the prior Single Justice motion and hearing and also the fact that the Commonwealth of Massachusetts allowed the defendant to be abandon in the mist of his appeal and failed to provide him with replacement counsel. This 6th amendment issue could not be brought at a sooner time or by any other means. The petitioner made a reasonable and "good faith" effort to bring this claim to the state courts attention as soon as possible. On 4/26/2004 the defendant, pro se, filed his amended brief and appendix and petitioned the Massachusetts Supreme Judicial Court to expedite the hearing of this appeal because bail issues need to be heard quickly to be effective, the lengthy time, since 7/28/2003, that it had been waiting to be heard, and that if defendant's trial started soon all these issues would be moot, never to be heard. This motion was denied and the brief was submitted to the court on 6/30/2004. No oral argument or evidentiary hearing was held in this appeal.

On 9/17/2004 the full court of the Massachusetts Supreme Judicial Court delivered their decision, which the petitioner filed with this court on 9/23/2004. In paragraph one of said decision the court states that Mr. Leo's sole reason for being a "flight risk" was his *possible* suicide attempt, 29 months earlier, which *may* have been done to avoid prosecution of his criminal charges. The court also reasoned that even though Mr. Leo had not attempted suicide while in General population for *over 29 months*, he voluntarily sought treatment for his mental illness and participated in weekly counseling with social workers and psychiatrists. He also *voluntarily* takes prescribed medications to treat his Major Depression problems. The Courts statements are based on documents written by the mental health workers of the correctional institution and the Court has relied upon

them to be true. Yet, statements from these same mental health workers who say that Mr. Leo is "not dangerous to himself and others" and "not a suicide risk" were totally disregarded. Even with all of this evidence to the contrary, and the fact that pre-trial probation, mandatory counseling and medication could all be conditions of release, and that Mr. Leo would also be living with his parents, siblings and niece, who would not realistically, bail the defendant out so that he may kill himself, the court still found that "NO" reasons except $500,000 cash would assure his safety and appearance. Mr. Leo's parents could also be ordered to report to the court probation any instances that defendant was not taking his medication, not attending depression counseling or any suicidal behavior. Despite of all of the aforementioned reasons proving that Mr. Leo could *reasonably assure* his continued appearance in court, the State Court found that only $500,000 cash would keep Mr. Leo alive.

As if these findings were not erroneous enough, the court went on to find that the defendant waived his right to argue that his bail was deliberately set at an excessive amount to guarantee his pre-trial detention. By definition, bail in an amount engineered purposefully in an amount greater than reasonably calculated to ensure defendants presence at trial is *Excessive*. Stack v. Boyle 342 U.S. 1, 5. The Federal Bail Reform, Act, 18 U.S.C. § 3142, expressly rejects the concept of setting bail at an unattainable amount in order to secure the detention of an arrestee. The Massachusetts Supreme Judicial Court then goes on to cite Querbin v. Commonwealth of Massachusetts 440Mass 108, a case where a defendant was held with *"NO BAIL"* to justify setting Excessive Bail. Its shocking to wonder if the Judges of the S.J.C really do not understand the differences between these two methods of detention and the *"DUE PROCESS"* and *'EXCESSIVE BAIL"* protections each requires. See US. V. Salerno 481 U.S. 739 and 18 U.S.C § 3142-3150. The Massachusetts high Court goes on to admit that suicide risk, as a matter of law, might not even be legally recognized as a Flight Risk, or what procedural safeguards are needed to avoid erroneous findings and how to give re-hearings when defendants are "NO" longer suicidal. This question has never been addressed in Massachusetts and even with this issue being capable of repetition and involving an issue of public importance, the Court is evading review. The S.J.C. chose to ignore the need for answers to these questions and left them unanswered. The court again cited a case for

comparison, U.S. v. Hanhardt, 173 F.Supp 2d 801, 804-807. The case decides issues completely different than the ones at hand in this case. Handhardt was already on bail when he overdosed on drugs and therefore violated an already standing bail agreement. That is not the same in this case. The S.J.C. also asserts that because Mr. Leo didn't ask for a mental health evaluation pursuant to M.G.L c. 123 § 12, which allows a 10 day emergency commitment based on findings by a mental health worker who has "Reason to believe that failure to Hospitalize such person would create a likelihood of serious harm to said person or others." One should not have been required to accurately determine if Mr. Leo was mentally ill, why he was possibly attempting to harm himself or that to meet the "Preponderance of the Evidence" Standard. The government needs more than hearsay to determine someone to be a "Flight Risk" by suicide. This assertion is completely unreasonable because a person suffering from mental illness cannot be expected to know he needs to ask for help, i.e. hospitalization, evaluations. The petitioners 6th Amendment claim was not heard because it was not properly before the full court, Due to an independent state procedural rule, it will only hear the claims presented to the Single Justice. The petitioner asked the court, and was *allowed* to amend the brief and since the 6th Amendment violations were committed by the S.J.C. itself by forcing the defendant to proceed with his appeal without counsel *after* the Single Justice appeal, but before the Full Bench appeal, the defendant had no other means to raise this claim. As such, the court should have allowed this claim to be heard and decided.

For the above stated reasons the petitioner's claims that the decision given on September 17, 2004 by the Mass S.J.C. is wholly unreasonable, completely erroneous. It contradicts both its own previous decisions on similar matters and established U.S. Supreme Court precedent. It also resulted in a Complete Miscarriage of Justice due to the proceedings that were totally inconsistent with the rudimentary demands of **FAIR** procedure. In situations as such, Federal Courts are authorized to issue the writ. Lindh v. Murphy 96 F3d 856, 519 U.S. 1074. See also Payton v. Woodford 346 F3d 1204.

## Exhaustion of State Remedies

The Federal habeas corpus statute requires that the petitioner exhaust all avenues of relief open to him in state courts before bringing Federal action. The Supreme Court has consistently held that exhaustion of state court remedies requires that petitioners "<u>Fairly present</u> their federal claims to the state courts, in order to give the state court an opportunity to pass upon and correct alleged violations of its own prisoners federal rights." <u>Duncan v. Henry, 513 U.S. 364.</u> Once the petitioners issues have been presented to the states highest appellate court it should be unnecessary to resubmit those issues to the state court by an alternate procedure. <u>Brown v. Allen, 344 U.S. 443, 447-450</u>.

"Fairly presented To State Court." That is the main question at hand. Did the petitioner in this case meet this requirement? In <u>Picard v. Connor, 404 U.S. 270,275</u> the Supreme Court defined this requirement: "This requires that the issue be presented in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the Federal questions." See also <u>Scarpa v. Dubois, 38 F3d 1, 6 (1st cir)</u> For example, by specific Constitutional language, Constitutional citation or appropriate Federal precedent, <u>Nadworny v. Fair 872 F2d 1093 (1st cir).</u> The constitutional argument may have been obscured by emphasis on Mass. Laws that deal with the same issues. Nonetheless, the briefs' language and citations should have alerted the court that a Constitutional argument was also being made. That appellate Courts did not address those Constitutional issues is "not" controlling. <u>Pettijohn v. Hall 599 F2d 476 (1st cir).</u> The state court may not thwart the Exhaustion Req. by refusing to acknowledge a Constitutional violation or by ruling inconclusively. <u>Carter v. Estelle 677 F2d 427,449</u> Petitioner need not exhaust remedies that may be "theoretically" available at some distant point. <u>Supra at 449</u> Furthermore, a petitioner does NOT have to invoke "the talismanic phrase," or "cite book and verse" on the Federal Constitution to " Fairly Present" a claim and a petitioners need only make "Essentially the same arguments before the state and Federal courts to exhaust a claim. See <u>Picard v. Connor 404 U.S. at 277-278; Tamapua v. Shimoda 796 F2d 261.</u> This very court defined "Fair Presentation" as "One who seeks to invoke the Federal Habeas power must fairly present, or, **do his best,** to present, issues to the states highest tribunal. See <u>also Neverson v. Bissonnette 242 F Supp 2d 78 (D-</u>

Mass 2003) See also <u>Paulding v. Allen 300 F. Supp 2d 247 ( D-Mass 2004) Laurore v. Spencer 67 F. Supp 2d 131 (D-Mass).</u>

Under the above definitions the petitioner claims that he did "Fairly Present" his claim to the state courts, and therefore his claimed 6th, 8th and 14th amendment violations of his Constitutional rights are exhausted. As explained earlier in this memorandum the 8th and 14th amendment violation were claimed before the Mass Single Justice, Sosman, J. and she found no error of law. Appeal of this decision was filed to the Full Court of the Massachusetts Supreme Judicial Court. Counsel abandoned appellant and the state failed to provide replacement counsel, appellant made several attempts to allow state to fix this violation and failed. Appellant asked the S.J.C. for permission to 'amend" his brief and this request was allowed. Appellant added the 6th Amendment claim in response to former counsel's ineffective assistance at Single Justice appeal and the subsequent abandonment and denial of counsel for Full Court appeal. This being the soonest available time to bring this claim, and the appellant made a "Good Faith' effort to raise this claim in the state court. Even thought this was all explained to the S.J.C. by the petitioner, the court decided to rely on an independent state procedural rule to bar hearing the 6th Amendment claim.

The rule that the Mass. High Court relies on to bar this claim is <u>S.J.C. Rule 2:21</u>. This rule Governs appeals from a Single Justice; denial of relief on interlocutory rulings. Normally, the full court under this rule will only review the papers and arguments presented to the Single Justice. However, <u>subsection (4) of this</u> rules states: The full court will consider the appeal on the papers filed with the Single Justice, Unless it *otherwise orders*. Also Com. v. Gagnon 625 NE2d 555 states, "It is within the discretion of the S.J.C. to consider issues not properly before it, when presented with argument and a complete record on which to examine the issues." Furthermore, the Mass. S.J.C. was fully aware of petitioner's deprivation of counsel and chose to completely ignore it. This violation caused a substantial risk of *"Miscarriage of Justice"* and places serious doubt whether the result of the appeal might have been different had the error not been made. Com. v. Lefave 714 NE2d 805;

'In all cases in which a state prisoner has defaulted a Federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of

the claim is barred "Unless the prisoner can demonstrate "CAUSE" for the default and actual "prejudice" as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claim will result in a fundamental Miscarrage of Justice". <u>Murray v. Carrier 477 U.S. 478, 485, 495</u>. The state of Mass denied the petitioner of his right to pre-trial appellate counsel, thus "cause" shown. "Prejudice always occurs when counsel is denied. To deny review of this claim would be a "miscarriage of Justice." <u>Coleman v. Thompson 501 U.S. 719.</u>

### 5th Amendments Claims

The <u>5th Amendment</u> violations of the <u>U.S. Constitution</u> that the petitioner claims were not presented to the state courts:

On Oct 5th, 2004 the petitioner filed a supplemental brief with this court explaining in detail how his rights under this amendment are being violated. In this case the petitioner is complaining about the *"length"* of his pre-trial detention. This claim cannot be raised until a greater than normal time has elapsed. When the petitioner was filing his amended brief in the Mass S.J.C., not enough time had passed to raise this claim. 7 months have passed since the petitioner's brief was filed and now the amount of time may constitute a violation of Due Process. To require the petitioner to begin the State Appellate process completely over again would add 6-12 more months of detention, which is exactly what the petitioner is claiming as un-constitutional. This process would be ineffective to protect the rights of the petitioner. <u>28 U.S.C. § 2254(b)(1)</u> allows the exhaustion requirement to be excused for this reason. Fed. Review of state prisoners habeas corpus petition would not be denied for failure to exhaust state remedies, where it was extremely likely, that claims would not be considered by state court until any possibility of meaning relief had passed. <u>Trimble v. St. of Kan. 927 F. Supp 401</u> Furthermore, the "Cause and Prejudice" excuse for exhaustion is also applicable here. The "cause" of the delay in trial is due to the state providing 6 different lawyers to represent the petitioner in his state criminal prosecution, and this delay has severely "Prejudiced" the defendant's ability to defend himself against these charges. Not hearing this claim would also be a

"Miscarriage of Justice". According to Murray v. Carrier, 477 U.S. 478; Both the Single Justice and the full court of the S.J.C. were fully aware an excessive amount of time had passed without a trial being conducted. They fully understood that the petitioner had been detained for 25-32 months. Any reasonable judicial officer would be aware of the Due Process concerns of such a long pre-trail detention, thus this claim too should be considered Exhausted and ripe for Federal review. Pitter v. Fischer F.Supp 2d 342.

Finally, a practical question asked to determine exhaustion is, "What more could a state prisoner do, than he already has done, to have a given the state court the first crack at deciding the Federal Constitutional questions involved?" U.S. ex rel. Brown v. Smith 200 F. Supp 885. The petitioner's answer to this question is "**Nothing.**" For all of the aforementioned reasons the petitioners prays that this honorable court will come to the same answer.

## CONCLUSION

For the reasons set forth above and the petitioner's prior motion in opposition to respondents motion to dismiss, the petitioner prays this honorable court finds that his claims are all exhausted and that his petition for relief may move forward. The claims that the petitioner has brought to this court are pretty basic, straight forth violations of clearly established Federal Precedent, supported by an overwhelming amount of facts. Pretrial detention and bail issues need to be heard expeditiously to be effective. The longer the honorable court takes to decide if the petitioner can even be granted a hearing on these matters, the risk that all of his claims will become "moot" by a state trial becomes greater and greater. For these reasons the petitioner objects to the respondents requests for 21 more days to respond again to the claims that the respondent has been aware of for 6 months. These claims are based on "facts" that overwhelm the record. NO further responses are required. Everyday that the petitioner spends behind bars is, unconstitutionally, a day taken away from his life for good,. This possible illegal detention has gone on for over 2 ½ years. When will it end?

Respectfully Submitted,

*Anthony M. Leo*
Anthony Leo, Pro Se

November 1st, 2004

Certificate of Service

I, Anthony Leo, hereby certify that a true copy of the above document was served upon the respondent, Maura D. McLaughlin, A.A.G. Comm. of Mass, by depositing the copy in the institution depository for pick up and delivery be first class mail, postage prepaid, as follows:

> Attorney Generals Office
> Comm. Of Massachusetts
> Criminal Bureau
> Attn: Maura McLaughlin
> 1 Ashburton Place
> Boston, MA 02108

Dated: Nov. 1st 2004

*Anthony M. Leo*