UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY M. LEO,
    Petitioner,


    v.                                                 CIVIL ACTION NO.
                                                 04-11006-JLT


COMMONWEALTH OF MASSACHUSETTS,
    Respondent.



**REPORT AND RECOMMENDATION RE:**
**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR**
**WRIT OF HABEAS CORPUS (DOCKET ENTRY # 39); MOTION TO GRANT**
**BAIL (DOCKET ENTRY # 32); MOTION TO REVISIT THE ISSUE OF BAIL**
**(DOCKET ENTRY # 43); MOTION TO STAY STATE COURT PROCEEDINGS**
**(DOCKET ENTRY # 30)**

**ORDER RE:**
**MOTION PURSUANT TO RULE 8 OF RULES GOVERNING HABEAS**
**CORPUS TO HOLD EVIDENTIARY HEARING**
**(DOCKET ENTRY # 47)**


**April 29, 2005**


**BOWLER, U.S.M.J.**

    Petitioner Anthony M. Leo ("petitioner"), an inmate at the

Worcester County House of Correction in West Boylston,

Massachusetts, filed the above styled petition seeking relief

under 28 U.S.C. § 2241 ("section 2241")[1] from his pretrial incarceration on four grounds.  In December 2004, this court recommended the dismissal of grounds two and three.  The court adopted the recommendation in January 2005 and, shortly thereafter, petitioner filed an amended petition raising only grounds one and four.[2]

Ground one alleges a violation of the Eighth Amendment through the imposition of excessive bail on the part of various associate justices of the Massachusetts Superior Court Department (Worcester County) ("the trial court").  Related to this ground for relief are the above styled motion to grant bail (Docket Entry # 32)[3] and the motion to revisit bail (Docket Entry # 43).[4]

_____

[1]  In December 2004, this court advised the parties that it would construe the petition, originally filed under 28 U.S.C. § 2254, as filed under section 2241.

[2]  The amended petition denotes these grounds as grounds one and two.  For consistency, this court refers to them under the label given to the grounds in the original petition, i.e., grounds one and four.

[3]  On January 7, 2005, the court adopted the December 15, 2004 Report and Recommendation which recommended denying the motion to grant bail (Docket Entry # 32) without prejudice to be renewed, if requested, after a state court hearing in late December 2004.  Petitioner presently seeks to renew this motion (Docket Entry # 32) as well as to renew the motion to stay (Docket Entry # 30).  (Docket Entry # 42, p. 2, ¶ 6).  Hence, this opinion addresses both motions (Docket Entry ## 30 & 32).

[4]  Procedurally, it is not at all clear whether petitioner filed the motion to revisit bail (Docket Entry # 43) in this court seeking the requested relief from this court or whether, instead, petitioner simply filed the motion as part of the state court record and/or an exhibit requiring no action.  The motion

These motions, both of which ask this habeas court to hold a bail hearing and to reduce the bail or release petitioner from pretrial custody on personal recognizance, fail for the same reasons the ground of relief fails, to wit, the decision to deny bail was proper and, indeed, this court would have reached the same decision applying de novo review to the issues of law and deference to the determinations regarding the issues of fact. See generally Gonzalez v. Justices of Municipal Court, 382 F.3d 1, 7 (1st Cir. 2004) (setting forth standard of review applicable to section 2241 petition), vacated and remanded on other grounds, __U.S.__, 125 S.Ct. 1640 (2005).

Ground four raises a violation of the Due Process Clause of the Fifth Amendment. Petitioner submits that his pretrial detention has become so long that is contravenes due process under Fifth Amendment.

The memorandum filed by respondent Commonwealth of

---

(Docket Entry # 43) and supporting memorandum (Docket Entry # 44) are duplicates of state court filings and address themselves to the trial court with the trial court's docket entry number. They are not addressed to this court and the docket entry number for this case ("04 cv 10006 JLT") was, apparently, hand written by the intake clerk on the motion (Docket Entry # 43) but not on the supporting memorandum (Docket Entry # 44). The court then referred the motion (Docket Entry # 43) to this court for a determination. To further complicate matters, the certificates of service for the motion and the memorandum (Docket Entry ## 43 & 44) address the assistant district attorney of the trial court. Nonetheless, out of an abundance of caution and given petitioner's pro se status, this court will construe the motion (Docket Entry # 43) as filed in this court and as seeking a determination of bail by this court.

3

Massachusetts ("respondent") in opposition to grounds one and four (Docket Entry # 39) is presently pending before this court. This opinion addresses this memorandum as well as the motion for an evidentiary hearing (Docket Entry # 47) and the aforementioned motions to grant bail, revisit bail and simultaneously stay state court proceedings (Docket Entry ## 30, 32 & 43).

<u>BACKGROUND</u>

On April 24, 2002, a judge of the Massachusetts District Court Department (Worcester County) held a hearing and set bail in the amount of $5,000,000, with surety, or $500,000 cash. (Docket Entry # 14, Ex. 3, R.A. 1; Docket Entry # 16, Ex. 4). Reasons checked for denying petitioner's release included an extensive record, failure to appear at a court proceeding, the nature of and the potential penalty for the offenses and the record of convictions.  The judge further explained that petitioner was "a convicted sex offender[,] on probation for assault/dang[.] weapon[,] extensive record [and] suicide attempt after arrest."  (Docket Entry # 14, Ex. 3, R.A. 1).

On June 13, 2002, a Worcester County grand jury indicted petitioner on four counts of aggravated rape, two counts of breaking and entering in the daytime to commit a felony and two counts of larceny from a building.  He was arraigned on those charges in the trial court on June 17, 2002, and pled not guilty.

4

At the June 17, 2002 arraignment, an associate justice of
the trial court again set bail in the amount of $5,000,000, with
surety, or $500,000 cash, without prejudice.  <u>See</u> Mass. Gen. L.
ch. 276, § 57; (Docket Entry # 14, Ex. 3, R.A. 4).  Petitioner
requested a review of the bail which took place on July 18, 2002,
before a different associate justice of the trial court.[5]

At the July 18, 2002 hearing, petitioner's counsel asked to
reduce the bail to $200,000, with surety, or $20,000 cash.
Petitioner's counsel acknowledged the "potential life sentence"
for the crime and the "daunting amount of evidence that the
Commonwealth has in this case."  (Docket Entry # 14, Ex. 2, R.
10).  Also at the hearing, the assistant district attorney
described petitioner's two prior suicide attempts and further
depicted, without an objection from petitioner's counsel,[6]
petitioner's attempted suicide at the time of his April 23, 2002
apprehension on the current charges.  According to the assistant
district attorney, petitioner was apprehended in a parked car
near railroad tracks unresponsive with the engine running and
piping going from the tailpipe into the window, a technique

_____

[5]  The record before this court contains the transcript of
this hearing.

[6]  Petitioner's counsel did object to the associate justice
considering a letter seized because the legality of the search
had not been decided.  The associate justice agreed not to
consider "the legality of the search or the contents of the
letter" for "purposes of the bail."  (Docket Entry # 14, Ex. 2,
R. 16).

5

similar to the technique petitioner used during a prior suicide
attempt.  (Docket Entry # 14, Ex. 2, R. 14-15).  Noting the
"objective evidence of the defendant's suicide attempt when he
was found," the associate justice refused the request to reduce
the $500,000 cash bail because petitioner presented a suicide
risk and, thus, a flight risk.[7]  (Docket Entry # 14, Ex. 2, R.
16).

On September 9, 2002, petitioner filed a motion to dismiss
appointed counsel.  On November 14, 2002, the trial court held a
hearing, allowed petitioner's counsel's November 14, 2002 motion
to withdraw and appointed new counsel for petitioner.  The
presiding associate justice advised petitioner that the
withdrawal and appointment of new counsel could delay the
proceedings.  Petitioner nonetheless indicted his assent to the
withdrawal.  (Docket Entry # 41).  The trial court conducted
three more conferences before the end of the year.

On March 20, 2003, newly appointed counsel filed a motion
for funds for a forensic psychiatric evaluation which the trial

---

[7]  Petitioner asserts that the "suicide attempt occurred
BEFORE the allegations in his criminal case came to light, NOT
AFTER."  (Docket Entry # 46).  There is no indication, however,
that the apprehension did not take place as described and in
accordance with the objective evidence noted by the associate
justice.
    Also at the hearing, the associate justice ordered
petitioner to provide a blood sample for DNA testing.  The
Commonwealth promptly provided the results to petitioner's
counsel upon receipt of the results in December 2002.

court immediately allowed.  (Docket Entry # 14, Ex. 2, R. 6-7).
Between January and March 2003, the trial court also held four
pretrial conferences.  During this time period as well as prior
and subsequent thereto, there is no indication that petitioner
objected to the delay in proceeding to trial by filing a motion
for a speedy trial.  (Docket Entry # 41).

On May 22, 2003, petitioner filed a motion to revisit the
issue of bail on the basis that he no longer presented an
imminent risk of harm to himself or to others.  Petitioner asked
for a reduction of the $500,000 cash bail to "$50,000 cash."
(Docket Entry # 14, Ex. 2, R. 22).  To support the requested
reduction, the motion attached redacted progress notes from a
social worker who interviewed petitioner at the Massachusetts
Correctional Institute in Concord, Massachusetts on February 4
and 21, 2003.  Her redacted notes describe petitioner as, "No
imminent risk of harm to self/others."  (Docket Entry # 14, Ex.
2, R. 22 & 23).  At the May 22, 2003 hearing, the presiding
associate justice denied the motion with the notation, "Denied--
declined to act--no change in circumstances."[8]  (Docket Entry #

---

[8]  Petitioner submits that "the proof that the defendant
posed no suicide risk made NO difference to [the associate
justice.]"  (Docket Entry # 46).  To the contrary, the associate
justice noted there was no change in circumstances and, thus,
simply chose not to credit the redacted progress notes.  (Docket
Entry # 14, Ex. 2, R. 22).  The redacted version of the progress
notes is extremely brief and, as reflected thereon, petitioner
chose not to "waive any privilege or confidentiality."  (Docket
Entry # 14, Ex. 2, R. 24).

7

14, Ex. 2, R.A. 22).  The associate justice simultaneously
allowed petitioner's motion for funds filed the same day.

Also on May 22, 2003, petitioner filed a notice of appeal of
the bail determinations to the Massachusetts Supreme Judicial
Court ("SJC").  In accordance with the required procedure, on
June 4, 2003, petitioner filed a petition before a single justice
of the SJC to review the bail and reduce it to $50,000 cash.  See
Commesso v. Commonwealth, 339 N.E.2d 917, 920-922 (Mass. 1975)
(explaining procedure to appeal bail determinations under Mass.
Gen. L. ch. 276, § 58, to single justice and, thereafter, to full
court under Mass. Gen. ch. 211, §§ 3, 5 & 6).  The petition for
bail raised an argument that bail was excessive under the Eighth
Amendment because petitioner no longer presented a suicide risk.[9]

A hearing before the single justice took place on June 18,

---

[9]  The relevant language in the seven page brief filed
before the single justice of the SJC appears under the heading
that petitioner "demonstrated that he was not a risk of flight"
and reads as follows:

    Additionally, "[t]he Eighth Amendment to the United States
    Constitution states:  'excessive bail shall not be required,
    nor excessive fines imposed, nor cruel and unusual
    punishments inflicted.'  Similarly, art. 26 of the
    Massachusetts Declaration of Rights provides, in pertinent
    part:  '[n]o magistrate or court of law, shall demand
    excessive bail or sureties, impose excessive fines, or
    inflict cruel or unusual punishments.'"  Torres v.
    Commissioner of Correction, 427 Mass. 611, 614 n.4 (1998);
    see, Robinson v. California, 370 U.S. 660 (1962) (The Eighth
    Amendment is applicable to the States by the U.S.
    Constitution, Fourteenth Amendment).

(Docket Entry # 16, Ex. 1).

2003.  At that hearing, petitioner's counsel depicted petitioner as being successfully treated for major depression with medication, "doing quite well" and "receiving treatment since he got into the system."[10]  (Docket Entry # 16, Ex. 3).  Petitioner's counsel described the psychiatric medication as including Prozac and that with the medication and the receipt of the "treatment since he got into the system," i.e., since his incarceration, "he's doing well."[11]  (Docket Entry # 16, Ex. 3).  Petitioner forthrightly and presently admits that he "suffers from an illness that *when untreated* causes suicidal behavior." (Docket Entry # 46; emphasis added).

   After hearing arguments from both sides, the single justice determined that she could not "fault the Superior Court judges for being of the view" that the reported success in addressing petitioner's depression in custody could not realistically be "continued on the outside in the absence of [the custodial] setting."  (Docket Entry # 16, Ex. 3; Docket Entry # 24).  She

_____

   [10]  During oral argument, the Commonwealth noted that, "Obviously the bail was set with the implicit or explicit intent that he would not be released."  (Docket Entry # 16, Ex. 3).

   [11]  Notes prepared by a UMass Correctional Medical Services social worker dated March 9, 2004, one year later, reveal that petitioner remained on Prozac and was also taking Elavil.  The notes reflect that petitioner required continued treatment and experienced fluctuating moods.  (Docket Entry # 14, Ex. 3). Other than the February 2003 redacted notes, the non-redacted portion of which is extremely brief, there is no evidence that petitioner's circumstances had changed for the better and, indeed, the March 2004 notes refute this assertion.

surmised that the various associate justices had reasoned that it
was a very strong case against petitioner, a finding with which
she concurred inasmuch as the anticipated diminished capacity
defense would "be a very difficult defense to pursue" for the
crime of rape. (Docket Entry # 16, Ex. 3). She also noted that,
given the prior history of suicide, the associate justices
justifiably thought that petitioner demonstrated a willingness to
perform desperate measures to avoid prosecution. She then
acknowledged the excellent treatment regimen received by
petitioner since being in the carefully controlled custodial
environment and that it was "not at all clear that [petitioner]
would obtain or pursue such treatment" or "have the ability to
regularly take his medication on his own." (Docket Entry # 16,
Ex. 3). She further explained that:

> The offenses are extremely serious and in light of the prior
> record and given the strength of the Commonwealth's case,
> there is a very strong likelihood that this man is facing a
> very lengthy state prison sentence. It appears, one would
> infer reasonably, that his prior suicide attempt was related
> to an attempt to avoid facing up to what this unfortunate
> recent conduct had entailed. And while it is good to know
> that he has responded well to treatment and medication while
> in a custodial setting, I cannot fault the Superior Court
> judges for being of the view that that is no indicator, at
> least not on these materials, that it, that the treatment
> and medication could realistically be continued on the
> outside in the absence of that setting.

(Docket Entry # 16, Ex. 3). She further noted that an associate
justice would therefore recognize the existence of "a significant
risk of flight if [petitioner] gets out" of custody

notwithstanding the "progress in jail."  (Docket Entry # 16, Ex.
3).  Accordingly, she concluded that petitioner remained "a very
significant flight risk."  (Docket Entry # 16, Ex. 3; Docket
Entry # 24).

Petitioner appealed the single justice's decision to the
full court.  The amended brief filed in April 2004 before the
full court repeated the argument that bail was excessive under
the Eighth Amendment because petitioner was no longer a suicide
risk.  In addition, the amended brief added a second Eighth
Amendment argument that bail was unconstitutionally excessive
because it was engineered to guarantee his continued confinement.
(Docket Entry # 14, Ex. 3).  The SJC considered the latter Eighth
Amendment claim waived because petitioner had not raised it
before the single justice.  (Docket Entry # 24).  The SJC's
September 17, 2004 opinion affirmed the single justice's denial
and reads, in pertinent part, as follows:

> On appeal, Leo claims that (1) $500,000 cash bail is
> unwarranted because, based on the social worker's progress
> notes, he demonstrated that he was no longer a suicide risk,
> and (2) the bail amount is unconstitutionally excessive
> because it was effectively designed to ensure his pretrial
> detention.  This court's review of the judgment of the
> single justice is "limited to correcting errors of law and
> abuse of discretion."  Preston v. Commonwealth, 391 Mass.
> 1017, 1017, 463 N.E.2d 552 (1984), citing Commesso v.
> Commonwealth, supra at 376, 339 N.E.2d 917.  There was no
> abuse of discretion or error of law here.  A review of the
> record supports the single justice's conclusion that Leo
> failed to present any information to her to ensure that he
> would continue to follow his treatment regime if released.
> As for his claim that the bail amount is excessive because
> it was designed to guarantee his pretrial detention, he

11

waived that claim by failing to raise it before the single justice. In any event, the amount of bail was not excessive merely because Leo could not post it. Cf. Querubin v. Commonwealth, 440 Mass. 108, 113-120 (2003) (judge may order defendant held without bail where no conditions of release would ensure defendant's presence at trial); see United States v. Mantecon-Zayas, 949 F.2d 548, 550 (1st Cir. 1991); United States v. Jessup, 757 F.2d 378, 388-389 (1st Cir. 1985); Cresta v. Eisenstadt, 302 F.Supp. 399, 401 (D.Mass. 1969).

(Docket Entry # 24).

Meanwhile, during the pendency of the appeal before the SJC, the trial court continued to process the case notwithstanding the absence of a motion seeking a speedy trial. Between June and September 2003, the trial court conducted four status conferences reviewing the case. (Docket Entry # 39, Ex. A). On August 1, 2003, the trial court allowed petitioner's motion for funds to conduct pharmacologic and toxicologic evaluations the day petitioner filed the motion. On October 31, 2003, petitioner filed another motion for funds. The trial court again immediately allowed the motion.

On December 10, 2003, petitioner filed a motion to impound and the trial court held a hearing. On December 16, 2003, petitioner filed another motion for funds, this time for a forensic psychiatrist. The trial court conducted a hearing on the motion and allowed the motion the same day thereby authorizing up to $2,800 for the forensic psychiatrist. On January 15, 2004, the trial court conducted another status conference to review the case.

12

On February 12, 2004, defendant filed a motion to suppress thereby further delaying the prospect of an immediate trial. Shortly thereafter on February 16, 2004, petitioner's counsel filed a motion to withdraw. On the same day, the trial court held a hearing on the motion to withdraw and advised petitioner that allowing the withdrawal could delay the proceedings. Petitioner indicated his assent to the withdrawal and, accordingly, the trial court allowed the withdrawal and appointed new counsel. (Docket Entry # 39, Ex. A; Docket Entry # 41).

Petitioner's newly appointed counsel filed an appearance the same day on February 26, 2004. On April 12, 2004, however, petitioner's newly appointed counsel also requested to withdraw his appearance.[12] The trial court again advised petitioner that a withdrawal could delay the proceedings. Petitioner nonetheless indicated his assent to the withdrawal regardless of the delay. After conducting a hearing, the trial court allowed the motion to withdraw on April 13, 2004. The trial court also appointed new counsel who filed an appearance the same day. (Docket Entry # 39, Ex. A; Docket Entry # 41).

In May, June and July 2004, the trial court held two status conferences and one pretrial conference. At the June 11, 2004

---

[12] The docket additionally reflects the cancellation, without explanation, of a jury trial on April 7, 2004. Presumably, the change of counsel precipitated the need for the cancellation.

conference, the trial court allowed petitioner's motion for additional funds for the forensic psychiatrist.

The trial court did not reach suppression hearings scheduled for September 16 and October 1 and 7, 2004. The docket fails to provide an explanation for the cancellations although the trial court did conduct a non-evidentiary hearing on October 7, 2004. The hearing concerned yet another motion to withdraw filed on the part of appointed counsel. The trial court allowed the motion after informing petitioner that the withdrawal could delay the proceedings. Petitioner again indicated his assent to the withdrawal regardless of the delay.[13] (Docket Entry # 39, Ex. A; Docket Entry # 41).

At petitioner's request, the trial court canceled the evidentiary hearing on the motion to suppress scheduled for November 5, 2004. On December 2, 2004, petitioner filed a motion

---

[13] Petitioner presently complains about the repeated withdrawal of appointed counsel. He also asserts, without evidentiary support, that he orally objected to three past attorneys' motions to withdraw. By affidavit, the Commonwealth avers that petitioner indicated his assent to the withdrawals. Although petitioner is proceeding pro se, he is intimately familiar with court proceedings. See Kenda Corp., Inc. v. Pot O'Gold Money Leagues, 329 F.3d 216, 225 n. 7 (1st Cir. 2003) (citing principle that "'[p]ro se status does not insulate a party from complying with procedural and substantive law'" and finding that pro se plaintiff's failure to develop legal argument resulted in waiver). Given the circumstances, petitioner should have asserted this "fact" through an affidavit particularly where, as here, there is no written motion objecting to the withdrawal or a written motion for a speedy trial or other written filing regarding the need to proceed immediately to trial.

to revisit the issue of bail.  The trial court rescheduled a December 17, 2004 bail review hearing at the joint request of both petitioner and the Commonwealth.  After conducting a hearing on December 21, 2004, an associate justice of the trial court denied the motion, "There being no change in the [petitioner's] circumstances."  (Docket Entry # 39, Ex. A).

Finally, the trial court conducted a further evidentiary hearing on the suppression issue as recently as February 3, 2005. The trial court also held additional status conferences reviewing the case in 2005.


DISCUSSION

Where, as here, section 2241 governs the proceedings, the deferential standard of review prescribed by the Antiterrorism and Effective Death penalty Act does not apply.  See Gonzalez v. Justices of Municipal Court, 382 F.3d at 7.  Thus, de novo review applies "to state court's conclusions of law."  Gonzalez v. Justices of Municipal Court, 382 F.3d at 7.  Even in section 2241 cases, however, this court defers to the state courts' findings of fact.  Gonzalez v. Justices of Municipal Court, 382 F.3d at 7.


I.   Ground One; Excessive Bail

A.   Excessive Bail as Designed to Ensure Petitioner's

15

Pretrial Detention

The SJC deemed this aspect of the Eighth Amendment claim waived. As correctly argued by respondent, the claim is in procedural default.

A long standing rule bars federal courts from reviewing state court decisions that rest on "independent and adequate state ground[s]." Trest v. Cain, 522 U.S. 87, 118 (1997); see also Torres v. Dubois, 174 F.3d 43, 45-46 (1st Cir. 1999). The doctrine bars a federal court from "reviewing federal questions which the state court declined to hear because the [petitioner] failed to meet a state procedural requirement." Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997); see also Burks v. DuBois, 55 F.3d 712, 716 (1st Cir. 1995) (federal habeas review generally precluded "when a state court has reached its decision on the basis of an adequate and independent state-law ground").

The SJC expressly and unequivocally considered the claim waived because petitioner failed to raise the claim before the single justice of the SJC. The SJC's determination "is a finding by the SJC of procedural default on the part of the petitioner and, as such, is the classic example of an independent and adequate state ground." Simpson v. Matesanz, 175 F.3d F.3d 200, 207 (1st Cir. 1999) (discussing procedural default albeit in context of section 33E, Mass. Gen. L. ch. 278); see also Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002) ("SJC regularly

16

enforces the rule that a claim not raised is waived").

For similar reasons, the "claim" of bail as excessive because of changed circumstances, raised in the motion to revisit bail and presented to the trial court in December 2004, is also in procedural default.  The December 2004 motion repeats the claim the SJC considered waived, to wit, the setting of bail in an unattainable amount guaranteed to secure petitioner's detention.  It is highly unlikely that the single justice will afford petitioner a hearing.  Harris v. Reed, 489 U.S. 255, 268 (1989) ("in determining whether a remedy for a particular constitutional claim is 'available,' the federal courts are authorized, indeed required, to assess the likelihood that a state court will afford the habeas petitioner a hearing on the merits of his claim").  Exhaustion of this claim is not required inasmuch as a single justice of the SJC would consider the claim previously raised and/or waived.  See Teague v. Lane, 489 U.S. 288, 298 (1989); Engle v. Isaac, 456 U.S. 107, 125-26, n.28 (1982) (discussing the separate doctrine of exhaustion in the context of state procedural bar); Carsetti v. State of Maine, 932 F.2d 1007, 1110-1111 (1st Cir. 1991) (exhaustion not required if claim is procedurally barred).

Where, as here, the petitioner obtains exhaustion "through a procedural default, the habeas petitioner must show cause for that default and prejudice arising therefrom before the federal

17

court may reach the merits of his habeas claims." <u>Hall v.</u>
<u>DiPaolo</u>, 986 F.2d 7, 10 (1st Cir. 1993).  Respondent correctly
asserts that the claim in the motion to revisit bail is precluded
by the procedural default rule.  (Docket Entry # 53, § B).

_____The analysis of the claim in the motion to revisit bail and
the aforementioned claim in ground one therefore devolves into
whether "there was cause for the default and actual prejudice, or
that there was a fundamental miscarriage of justice." <u>Gunter v.</u>
<u>Maloney</u>, 291 F.3d at 81.  As to cause, ordinarily the petitioner
must "show that some objective factor external to the defense
impeded counsel's efforts to comply with the State's procedural
rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>accord</u> <u>Burks</u>
<u>v. DuBois</u>, 55 F.3d at 716-717 (citing <u>Murray v. Carrier</u>, 477 U.S.
at 488); <u>Magee v. Harshbarger</u>, 16 F.3d 469, 471 (1st Cir. 1994)
(quoting <u>Murray v. Carrier</u>, 477 U.S. at 488).  "One factor
accepted as cause is ineffective assistance of counsel at a level
which violates the Sixth Amendment." <u>Gunter v. Maloney</u>, 291 F.3d
at 81.  In the case at bar, however, petitioner fails to
demonstrate cause.  <u>See</u> <u>generally</u> <u>Burks v. DuBois</u>, 55 F.3d at 716
(the petitioner "has the burden of proving both cause and
prejudice").  Appointed counsel's performances were not
constitutionally ineffective.  No objective factor impeded
petitioner's ability to raise the excessive bail claim and,
indeed, he managed to present the argument in the amended brief

18

to the full court.  Petitioner's failure to show cause absolves
the need to address the prejudice prong.  See Magee v.
Harshbarger, 16 F.3d at 472 (declining to address prejudice prong
"[b]ecause the cause and prejudice requirement is conjunctive");
see also Burks v. DuBois, 55 F.3d at 716 n.3 (not addressing
prejudice prong because court found no cause).  Finally, the
wealth of evidence and the Commonwealth's very strong case on the
bail issue and on the underlying merits demonstrate that the
failure to review the claim will not result in a fundamental
miscarriage of justice.  See generally Murray v. Carrier, 477
U.S. at 496; see Burks v. DuBois, 55 F.3d at 717-718.

    B.  Excessive Bail Inasmuch as Petitioner is not a Flight
Risk

    Petitioner presented this claim to both the single justice
and the full court.[14]  He argued and continues to argue that he
has roots in the community and, thus, is not a flight risk.  He
further maintains that he is not a suicide risk given the
evidence presented in the February 2003 redacted notes of the
social worker.  The February 2003 notes are extremely brief due
to the redactions.  Petitioner's continued need for treatment and
adjustment to medications are evidenced in the March 9, 2004
notes prepared by a UMass Correctional Medical Services social

---

    [14]  Any duplicate claim in the motion to revisit bail is
thus exhausted but, as stated infra, unavailing.

worker.[15]  (Docket Entry # 14, Ex. 3).

The Eighth Amendment "both limits pretrial confinement to situations where presence at trial cannot be safely assured by means other than confinement and tacitly indicates the Founders' acceptance of the practice of pretrial confinement in such special cases." <u>Feeley v. Sampson</u>, 570 F.2d 364, 369 (1st Cir. 1978); <u>see</u> <u>Nowaczyk v. State of New Hampshire</u>, 882 F.Supp. 18, 21 (D.N.H. 1995) (noting that "bail is not excessive under the Eighth Amendment if it is 'reasonably calculated' to ensure a defendant's appearance at trial and preventing his flight from the jurisdiction");[16] <u>accord</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 534 (1979) ("government may permissibly detain a person suspected of committing a crime prior to a formal adjudication of guilt"); <u>United States v. Acedvedo-Ramos</u>, 755 F.2d 203, 206 (1st Cir. 1985) ("right of an accused person to bail, while critically

---

[15]   See footnote number 11.

[16]   As correctly noted by the court in <u>Nowaczyk</u>:

In assessing a federal habeas corpus review, a federal court "does not sit in appellate review of the state court's exercise of judicial discretion." <u>Young v. Hubbard</u>, 673 F.2d 132, 134 (5th Cir. 1982).  After all, a federal court reviewing bail cannot be expected to conduct a de novo bond hearing for every habeas corpus case that comes before it. This would not only further burden the federal court system that now is having difficulty dealing with the increasing number of habeas corpus petitions, but would also represent an unwarranted interference in the operation of the states' criminal justice system.

<u>Nowaczyk v. State of New Hampshire</u>, 882 F.Supp. at 21.

important, is not absolute" and "[w]here risk of flight is
unusually great, a court may deny bail and keep a defendant in
custody in order to insure that the trial will take place");
Querubin v. Commonwealth, 795 N.E.2d 594, 539-540 (Mass. 2003)
(recognizing the absence of an absolute constitutional right to
be released on bail prior to trial).  As recognized by the
Supreme Court in Bell, "the Government has a substantial interest
in ensuring that persons accused of crimes are available for
trials and, ultimately, for service of their sentences, or that
confinement of such persons pending trial is a legitimate means
of furthering that interest."  Bell v. Wolfish, 441 U.S. at 534.
Finally, it is reasonable to find that an accused is a flight
risk where he is a suicide risk.  See, e.g., United States v.
Hanhardt, 173 F.Supp.2d 801, 804-805 (N.D.Ill. 2001); United
States v. Tropiano, 296 F.Supp. 284, 286 (D.Conn. 1968).

    In the case at bar, the record supports the finding that
petitioner posed a high risk of avoiding trial by suicide.  Given
the absence of evidence to support that petitioner could
successfully continue treatment in a non-custodial setting and
the lack of changed circumstances, the state court acted
correctly and reasonably in refusing to decrease bail.
Furthermore, contrary to the circumstances at issue in the
Wagenmann case cited by petitioner (Docket Entry # 3), the
charges are extremely serious and petitioner is far from a

21

responsible citizen.[17]   Cf. Wagenmann v. Adams, 829 F.2d 196, 213
(1st Cir. 1987) (noting that the state court defendant "was a
responsible citizen, gainfully employed, without any blackened
past record" and the charges were "not particularly serious
ones").   The seriousness of the charges and the force of the
evidence undoubtedly counsel in favor of the high bail.   See,
e.g., Cresta v. Eisenstadt, 302 F.Supp. 399, 401 (D.Mass. 1969)
(rejecting habeas challenge to state bail determination).   The
primary reason for setting the bail at the $500,000 cash amount
was to ensure petitioner's presence at trial.   As such, ground
one and any accompanying similar claims in the motions to grant
and revisit bail fail to warrant habeas relief.


II.   Ground Four; Fifth Amendment

As previously noted, ground four raises a violation of the
Due Process Clause of the Fifth Amendment because of the length
of the pretrial detention.   Petitioner submits that his detention
has become so long that is contravenes due process under the
Fifth Amendment.   He also points out that respondent inaccurately
addresses the claim as a violation of his right to a speedy trial

---

[17]   Petitioner's reliance on the 1984 Bail Reform Act, a
federal statute governing pretrial release for federal prisoners,
as well as case law interpreting this statute, is misplaced
inasmuch as he is a state prisoner charged with committing state
offenses.

under the Sixth Amendment.[18]  Regardless of nomenclature,
respondent challenges ground four on the merits and this court
agrees that it fails to warrant habeas relief.[19]

Petitioner is being held because he is considered a risk of
flight.  Accordingly, cases interpreting the Fifth Amendment's
due process protection relative to defendants who pose a risk of
flight are more germane than cases addressing the amendment as it
applies to defendants who pose a danger to the community or a
threat to a witness' safety.

It is well settled that, "[D]ue process is a flexible
concept" and "arbitrary lines should not be drawn regarding
precisely when defendants adjudged to be flight risks . . .
should be released pending trial."  United States v. Zannino, 798
F.2d 544, 547 (1st Cir. 1986).  Moreover, as noted by the Supreme
Court in discussing the due process boundaries of the Fifth
Amendment, "an arrestee may be incarcerated until trial if he
presents a risk of flight."  United States v. Salerno, 481 U.S.

---

[18]  In no uncertain terms, petitioner states that he "has
never and still is not making a "Speedy Trial Claim" and that
respondent confuses a Sixth Amendment claim, which is not raised,
from the Fifth Amendment claim, which is raised.  (Docket Entry #
46).

[19]  Hence, this court bypasses the issue of exhaustion
particularly given that respondent argues that it is a Sixth
Amendment claim that is not exhausted.  In contrast, much of the
facts and argument applicable to the merits of a Sixth Amendment
speedy trial claim apply to the Fifth Amendment due process
claim.

739, 746 (1987) (citing <u>Bell v. Wolfish</u>, 441 U.S. at 534).  As previously noted, "The Government has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences, or that confinement of such persons pending trial is a legitimate means of furthering that interest."  <u>Bell v. Wolfish</u>, 441 U.S. at 534.

As articulated by the First Circuit in <u>Zannino</u>, the due process inquiry mandates a careful case by case examination.  <u>See</u> <u>United States v. Zannino</u>, 798 F.2d at 547.  Due process judgments under the Fifth Amendment:

> should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits.  Moreover, these judgments should reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity.

<u>United States v. Zannino</u>, 798 F.2d at 547.

Contrary to petitioner's assertion of changed circumstances given the February 2003 redacted notes, he continues to present a strong flight risk, as found by the various state court judges.  The more recent March 2004 notes support such a conclusion.  Furthermore, the charges are both severe and grave and pose the prospect of a lengthy sentence.  The evidence against petitioner

is very strong.[20]

In addition, the prosecution has been ready to try this case since February 2003 and has fully complied with all discovery obligations. (Docket Entry # 41). In contrast, petitioner sought to dismiss one attorney in September 2002 and, reviewing the motions to withdraw filed in state court (Docket Entry # 29, Attachment 1), petitioner's conduct has needlessly delayed the state court proceedings and contributed to multiple changes in counsel. Moreover, petitioner has never filed a motion asking the trial court for an immediate trial date. Instead, he has indicated his assent to the multiple changes in attorneys notwithstanding the admonishment from the trial court about the resulting possibility of delay. (Docket Entry ## 40 & 41). Reviewing the state court record and the motions filed by petitioner's appointed counsel, petitioner's complaint that the trial court consistently appoints ineffective counsel who fail to satisfy the requirements of the Sixth Amendment is unconvincing. Finally, petitioner's motion to suppress has further delayed the proceedings. See United States v. Gines Perez, 152 F.Supp.2d 137, 154-155 (D.P.R. 2001) (noting, in context of deciding that pretrial delay did not violate due process, that motions filed by the defendant, including motion to suppress, caused further

---

[20] The single justice of the SJC characterized the Commonwealth's case as "very strong." (Docket Entry # 16, Ex. 3).

25

delay).

On the other hand, the length of the pretrial detention is unusual and extremely long. Although the First Circuit has not established a maximum time frame where pretrial detention automatically transforms itself into a due process violation, it has indicated that "in most cases sixteen months would exceed due process limitations." United States v. Daniels, 2000 WL 1611124 at * 4 (D.Mass. Oct. 5, 2000) (further noting that more lengthy incarcerations likely require stronger justifications for detention); see United States v. Zannino, 798 F.2d at 548. The three year length of petitioner's detention falls well beyond 16 months.

As recognized by the single justice (Docket Entry # 16, Ex. 3; stating that petitioner's case presents "a difficult and unusual" situation), however, this case presents unusual circumstances. On balance and giving the required deference to the factual findings of the state court judges, this court cannot say that the pretrial detention violates due process under the Fifth Amendment.

This recommendation therefore moots the renewed motion to stay (Docket Entry # 30). The motions to grant and revisit bail (Docket Entry ## 32 & 43) are unavailing on the merits. Finally, an evidentiary hearing is not necessary. The record contains the transcripts from all of the relevant state court proceedings. It

26

also contains all of the relevant state court filings.
Petitioner received full and fair hearings and had the
opportunity to present the evidence to the trial court in the
form of the redacted February 2003 treatment notes and the trial
court promptly allowed petitioner's motions for funds to conduct
a forensic psychiatric evaluation.  Thus, whether applying a pre-
AEDPA or post-AEDPA standard, see Edwards v. Murphy, 96 F.Supp.2d
31, 49-50 (D.Mass. 2000) (setting forth relevant standards), this
court declines to hold an evidentiary hearing.

CONCLUSION

     In accordance with the foregoing discussion, this court
**RECOMMENDS**[21] that respondent's request to deny the writ (Docket
Entry # 39, p. 11) be **ALLOWED** inasmuch as neither grounds one or
four warrant habeas relief.  This court likewise **RECOMMENDS**[22]
that the motion to stay (Docket Entry # 30) and the motion for
bail (Docket Entry # 32), which petitioner renewed in a recent
filing (Docket Entry 42), be **DENIED**.  This court also

---

     [21]  Any objections to this Report and Recommendation must be
filed with the Clerk of Court within ten days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection.  Any party may respond to another
party's objections within ten days after service of the
objections.  Failure to file objections within the specified time
waives the right to appeal the order.  United States v. Escoboza
Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v.
Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

     [22]  See the previous footnote.

**RECOMMENDS**[23] that the motion to revisit bail (Docket Entry # 43)

be **DENIED.**  The motion to hold an evidentiary hearing (Docket

Entry # 47) is **DENIED.**

            /s/ Marianne B. Bowler
           **MARIANNE B. BOWLER**
           United States Magistrate Judge

---

[23]  See footnote 21.