UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 MAY 20  P 1: 52

U.S. DISTRICT COURT
DISTRICT OF MASS

|  |  |
|---|---|
| ANTHONY LEO, | ) |
|  | ) |
| Petitioner | ) |
|  | ) |
| v. | ) |
|  | ) Civil Action No. 04-11006-JLT |
| COMMONWEALTH OF | ) |
| MASSACHUSETTS , | ) |
|  | ) |
| Respondent | ) |
|  | ) |

## OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATIONS
## DATED APRIL 29, 2005

Now comes the petitioner, Anthony Leo, pro Se, and respectfully objects to the findings of fact and rulings of law recommended by Bowler, U.S.M.J.

This report and recommendation was requested by Tauro, J. on 1-26-05 (Docket Entry #45) for a decision only as to the petitioner's motion to Grant Bail. This motion was originally filed on 11-22-04 (Docket Entry #32) and was denied without prejudice on 12-15-04 (Docket Entry #36) in Bowlers prior report and recommendation. The reason given for this denial was that at the time the state court was reviewing the petitioner's bail on December 17, 2004 and the federal court should wait until after this state review in the interests of comity

On December 21, 2004, Hillman, J. of the Worcester Superior Court denied the petitioner's motion to Reduce Bail. No rulings of law or written findings were given with this decision except "No Change in Circumstances". A copy of this motion and decision was sent to this court (Docket #42) for exhibit purposes only. This was done only to show the continued conduct of neglect in giving any rulings of law to support the petitioner's current bail demand and how they relied on prior erroneous facts.

What Bowler, U.S.M.J. seems to have done in this latest report is to review the whole matter again, ignoring the issue she was ordered to review (Docket # 32 and #43) and then recommending dismissal of the entire petition. This goes directly against her prior report (Docket # 36) allowing claims #1 and #4 to proceed. This opinion was approved by Tauro, J. on 1-7-05. Nothing has changed in this matter since her last report. Why the drastic decision? This last review by Bowler, U.S.M.J. was not requested and should not have been done. The order of Tauro, J. on 1-7-05 should stand and the amended petition (Docket Entry #48) should proceed to be heard.

Bowler, U.S.M.J. goes on to state on page 3 of her new report that the state courts decision to "deny" bail was proper, and that the same findings would be reached by this court deferring to the issue of fact. This finding is completely erroneous because the petitioner was "NEVER" denied bail. A bail was granted, but set deliberately at an unattainable amount to guarantee pre-trial detention and relying on "NO EVIDENCE" or "FACT", only inferences and guesses.

## OBJECTIONS TO MAGISTRATES BACKGROUND FACTS

The following objections are to errors made by Bowler, U.S.M.J. in the background section of her report and recommendation.

1)    1. On Pg. 4 she states the reasons for setting the $500,000.00 cash bail were 1. Extensive record, 2. Defaults, 3. Nature of offense/potential Penalty and 4. Record of convictions. This last reason is the same as the first. Additionally the judge wrote that the defendant was on probation, that he attempted suicide "After" arrest and that he was a convicted sex offender. First of all, the petitioner was NOT on probation, and as such the matter was terminated without any hearing 30 days later. The suicidal behavior took place "Before" any arrest and incident A and B was in 1988 and received 1 year of probation. The petitioner can prove all of these claims if he is ever given the chance to be heard in person.

2)      Also, at this initial arraignment, where the $500,000.00 bail was first demanded, the
        Commonwealth had "NO" evidence of guilt of any kind. All they had was a verbal
        complaint. Furthermore, the charges at this time did not carry a potential life sentence.

3)      2. At the July 18, 2002 hearing the evidence against the defendant was far from daunting.
        DNA testing was not even started at that time and was not completed until December,
        and since the petitioner will prove an ongoing sexual relationship with this person at the
        time of the offense, it will mean little as evidence.

        3.The D.A. did describe the petitioner's history of suicidal behavior and apparent suicidal
        behavior shortly "BEFORE" being found by police. This latter behavior being very
        similar to prior behavior. As such, Kern, J. denied to lower the bail to any amount that
        the petitioner might be able to post and gain his freedom. The reason given for this
        decision was that if the petitioner were released he would kill himself and thus avoid
        prosecution. This made him a flight risk. No doctor or mental health workers ever spoke
        to, or evaluated the petitioner before his decision.

                The S.J.C of Massachusetts further ruled that "Risk of Suicide" was the "SOLE"
        reason for the $500,000.00 demand. See S.J.C. decision (Docket Entry #24). This court
        also went on to state that in Massachusetts, the issue of suicide in bail determinations has
        never been decided. Can risk of suicide be used as "flight" or 'dangerousness"? What
        Due Process must be given? Can a monetary amount be used to stop suicidal behavior?
        The court refused to decide these issues at that time.

                The petition also states that it was error for the court to "infer" that the current
        suicidal behavior was due to the criminal charges. The court was aware that the
        petitioner had a history of suicidal behavior, very similar to the latest attempt, even when
        "NO" criminal charges were pending against him. Many people suffer from mental
        illness that causes suicidal behavior, and avoiding criminal charges is not the reason for
        such behavior. The petitioner will also prove, if granted oral argument, the questions
        presented in footnote #7 of Bowlers, U.S.M.J. report. Also, as stated before, the D.N.A.
        results were not promptly delivered but took 8 ½ months to complete.

## WITHDRAWAL OF APPOINTED COUNSEL AND SPEEDY TRIAL ISSUES

The petitioner objects to the Magistrate's findings of fact, which are NOT supported by any evidence, of any 'advice" or "discussions" that took place between any state judges and the petitioner on the subject of withdrawal of counsel and associated delays. It is also error for the Magistrate to assume that the petitioner assented to each withdrawal and the 38 month delay. Bowler, USMJ, bases these assumptions "solely" on the affidavit submitted by the state D.A. in which he states, "To the best of my knowledge, the defendant has not objected to the withdrawal of any attorney and that he was reminded that withdrawal would cause delay and that the defendant did not care how long he sits in jail without a trial. This statement is not "proof" (fact) and goes directly against common sense considering all the work the petitioner has done to the contrary. D.A. Reilly is not an unbiased party on this issue. The petitioner has sought to obtain these transcripts for over a year and they have still have NOT been produced. This evidence would prove the D.A.'s statement to be false.

This matter is extremely complicated, and as such, it is very difficult to explain and argue in writing. To date, the petitioner has had five different attorneys represent him in Superior Court alone. This situation would never have happen if the state judges followed the proper procedures and laws governing withdrawal of counsel. Again, a review of the transcripts would prove this claim. On more than one occasion the petitioner voiced his objections to repeated withdrawal of counsel and the prejudice that was being caused to his defense. These pleas were ignored by the sitting judges. At the present time, petitioner's present counsel is under investigation by the Worcester County Bar Advocates for negligence of the petitioner's case, which has been found to be happening and was given a verbal reprimand and the case "red flagged". Additionally, the magistrate repeatedly states how numerous funds have been given to the defense for experts. What the docket does not tell you is that in the three years of detention and to this day the petitioner has NEVER had an evaluation or spoken to any of these "experts". This neglect alone has prejudiced the defense to a point where a fair trial and criminal

responsibility evaluation will be impossible to perform. All of this is directly attributed to the limitless detention caused by the unconstitutional demand of "excessive bail".

## SPEEDY TRIAL ISSUES

The right to a speedy trial does NOT disappear because it is not asked for. The court and the D.A. also have responsibilities to ensure this right is protected. The "Primary" responsibility for setting a date for trial lies with the prosecution. A defendant does not become responsible for the delay simply by not asking for trial.

Furthermore, if the petitioner demanded a speedy trial, which prior counsel opposed, he would have been forced to either proceed to trial with woefully inadequate and unprepared counsel making the trial a farce and mockery of justice, or be forced to proceed pro se. The petitioner's current situation is similar to the one in U.S. ex rel. Thomas v. Zelker, 332 F.Supp. 595 (1971).

## EXCESSIVE BAIL

On June 18, 2003 a single justice of the SJC heard argument on Excessive Bail claims by the petitioner's counsel. The petitioner was not allowed to attend the hearing. Because of this absence and the failure of counsel to adequately prepare for this argument many questions of fact went unanswered or were incorrectly answered. See transcript (Docket Entry #16). Furthermore, since the Commonwealth admitted in both its written and oral argument that the cash demand was set at a deliberately unattainable amount to guarantee the petitioner's unlimitless detention, it was error of Sosman, J. and later of the SJC to state that this issue was not presented when the operative facts and legal theory are presented. It is NOT necessary to invoke the "Talismanic Phrase" or cite "Book and Verse" on the Federal Constitution, only that the issue be presented in such a way as to make it "probable" that the reasonable jurist would have been alerted to the existence of

the federal question. See Picard v. Connor 404 U.S. 270, 274: also Pettijohn v. Hall 599 F.2d 476 (1st Cir.).

Federal and state courts have repeatedly ruled that it would be unconstitutional to demand excessive bail to assure that a defendant will NOT gain his freedom. Stack v. Boyle 342 U.S. 1: U.S. v. Motlow 10 F. 2d 657: Carlisle v. Landon, 342 U.s. 524: U.S. V. Salerno 481 U.S. 739.

Single Justice Sosman knew this is what was done to the petitioner and refused to address the issue. As such, the following appeal to the full Bench of the SJC (Docket Entry #24) was NOT in procedural default. The SJC also erroneous cited a state case "Queobin v. Com. 440 Mass 108, 113-120 (2003)" to decide the petitioner's case. In Queobin the defendant was held WITHOUT bail and as such does not run afoul of the 8th amendment. This is a wholly separate issue than the petitioner's: The use of an unreachable financial demand to guarantee detention. Again, the petitioner states for the above reasons the claim be considered exhausted and should be heard by the court.

## PROGRESS REPORTS & EVIDENCE OF SUICIDE RISK

As the petitioner has explained in his earlier briefs, it is error to demand that the petitioner produce "Proof" that he is NOT suicidal (flight risk) when the Commonwealth NEVER presented any evidence that he was suicidal. The only proof relied upon was a hearsay statement by the D.A. To understand the problems the petitioner is raising, one MUST understand the Mental Health/Commitment laws in Massachusetts, M.G.L. c. 123.

Before a suicidal, hence "Dangerousness" by legal definition (see M.G.L. c.123§ 1,2), person can be involuntarily committed he must be evaluated by a psychiatrist and found to require institutionalization. This expert must give this finding to a judge. This expert can be cross-examined by defense counsel and the defendant can call his own doctor to counter this testimony. Lay witnesses, etc...can also be called to testify for either side, if necessary, and the defendant may testify himself. If commitment is found necessary for the defendant's safety, he is committed to a hospital, not a jail. Also, this person is required, by law, to a periodic 6 month review. Once a doctor finds that

institutionalization is "no longer needed" the person MUST be released. These rights (procedures) were completely denied the petitioner in this case. He has been denied the equal protection of the law. See <u>Jackson v. Indiana 406 U.S. 715; Baxstrom v. Herold 383 U.S. 107.</u>

Furthermore, it is impossible for the petitioner to obtain anything more than the Progress reports and notes from his doctors to prove he is "no longer suicidal". Massachusetts jails DO NOT do evaluations for the courts on mental health issues. These are only done by court order at state hospitals. The petitioner states that it was error for every reviewing judge considering this issue not to order the petitioner be evaluated to accurately answer these questions. Not one judge has ever requested this procedure. "ANY" doubts regarding the propriety of release "SHOULD" be resolved in the defendants favor. <u>U.S. v. Motamed: 767 F.2d at 1405.</u> In order to give effect to the principles that doubt regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases, applying the "clear preponderance" test. <u>Id at 1405; U.S. v. Townsend 897 F. 2d 989,993.</u> Also, the mere "possibility" of flight is insufficient to justify detention<u>. U.S. v. Himler 797 F 2d 156,162.</u> The requirement that the conditions of release reasonable assure a defendant's appearance cannot be read to guarantee against flight. <u>U.S. v. Portes 786 F 2d 758, 764; U.S. v. Tortora, 922 F 2d 880,884 (1st Cir); and U.S. v. Ailemen 165 F.R.D. 571, 579 (N.D. Cal. 1996).</u>

In the present case there were many doubts and they were all decided against the petitioner. This was another major error. Furthermore the petitioner would be much less likely to commit suicide if he were at home living with his family who would watch him 24/7. These people know him best and love him. They will get him to any treatment needed and make sure he takes any medications he may need. This jail cannot do any of this. Eight people have died here at the Worcester County Jail recently, several by suicide. The sheriff of this jail stated this is not the place for suicidal people to be. See Exhibit B accompanying this brief.

## 18 U.S.C. § 2254 vs. § 2241

Unlike the statutory exhaustion requirement applicable to §2241 petitions, exhaustion is not explicitly required by §2241 ( c )(3). Habeas petitioners are generally required to exhaust state remedies whether brought under §2241 or §2245. The heighten standards imposed on §2245 by the Anti-terrorism and Effective Death Penalty Act of 1996 do not apply to §2241 petitions. Stow v. Murashige, 03-17036 (9th Cir. 2004) ; Benson v. Sup. Ct 663 F2d 355 (1st cir. 1981) The petitioner states that a slightly lesser standard of exhaustion should apply to §2241 petitions and as such claims #1 & #4 of the amended petitions should be exhausted and thus heard by this court. Dismissal would be inconsistent with the imperative that underscores all habeas proceedings: ensuring that federal constitutional claims may be reviewed promptly in a federal forum when exhausted. See Braden v. 30th Judicial Cir. Ct, 410 U.S. 484, 490. The writ of habeas corpus needs to be preserved as a swift and imperative remedy in all cases of illegal restraint or confinement.

## Evidentiary Hearing

The Petitioner again request that an evidentiary hearing be granted so that he may prove that the state court fact finding process was not adequate to accord a presumption of correctness. Material facts were not adequately developed at a state court hearing. The granting of this one hearing will allow the petitioner to correct the numerous errors in the state court record, docket, mental health status and reports and his ability to receive treatment if released. Holding this hearing would serve the ends of justice and contribute to the final resolution of this controversy. The petitioner only prays for one chance to be heard on this issue.

## EXHIBIT A, ACCOMPANYING APPENDIX

Exhibit A is enclosed to show that many similarly charged defendants facing similar penalties (Life sentences) and even suicidal persons are released on much lesser

cash demands. These suicidal defendants are usually sent to hospitals before bails are finally set. This exhibit also shows that people in jails can still commit suicide anytime they want. This severely undermines the Commonwealths argument that the petitioner needs to be in jail to keep him from committing suicide. In over 3 years, the petitioner has not once attempted any suicidal/bizarre behavior. The inference that must be drawn from these facts is that the prior alleged risk of flight by suicide no longer exists and that the petitioner could receive much better treatment and supervision if released.

## CONCLUSION

In accordance with the foregoing objections, the petitioner asks that his motion for evidentiary hearing be granted promptly so that the numerous errors in the state record can be corrected and this honorable court can hear the truth of this matter and makes it decision.

The petitioner also objects to the magistrate's recommendations to dismiss claims #1 and #4, which has already been allowed to proceed by Tauro, J. These claims should proceed and be heard promptly as they are pretrial bail issues and risk being "mooted" by trial.

Additionally, this honorable court should grant the petitioner's motion to grant bail because the risk of flight posed by the petitioner is non-existent and suitable conditions can be set to ensure his appearance at trial. The petitioner prays that this honorable court will give him one more chance to present oral argument before it resolves or dismisses the petition in whole.

Respectfully Submitted,

Anthony Leo, Pro Se

May 16, 2005

Certificate of Service

I, Anthony Leo, hereby certify that a true copy of the above document was served upon the respondent, Maura D. McLaughlin, A.A.G. Comm. of Mass, by depositing the copy in the institution depository for pick up and delivery be first class mail, postage prepaid, as follows:

Attorney Generals Office
Comm. Of Massachusetts
Criminal Bureau
Attn: Maura McLaughlin
1 Ashburton Place
Boston, MA 02108